UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VANESSA L. RIGGINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:23-CV-899-RHH |
| MARTIN O'MALLEY,[1] Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Vanessa Riggins' appeal regarding the denial of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 6.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Riggins' application and remand for further proceedings.

**I.    Background**

The Court adopts the facts set forth in Riggins' statement of facts (ECF No. 17-1) and Defendant's response (ECF No. 18-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the defendant in this suit. *See* 42 U.S.C. § 405(g).

On or about November 26, 2019, Riggins applied for SSI, alleging that she has been unable to work due to disability since October 9, 2019. (Tr. 585, 590.) Riggins alleged disability due to depression, migraines, generalized anxiety disorder, and fibromyalgia. (Tr. 415.) Her application was initially denied and denied again on reconsideration. (Tr. 425, 450.) Then, she filed a request for Hearing by Administrative Law Judge (ALJ). (Tr. 489-90.) On July 13, 2022, the ALJ held a hearing on Riggins' claim. (Tr. 353-75.) Riggins was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on August 2, 2022, the ALJ found Riggins was not disabled as defined in the Act. (Tr. 8-35.) On September 2, 2022, Riggins filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 582-84.) On May 18, 2023, the Appeals Council denied Riggins' request for review, and adopted the ALJ's decision in full. (Tr. 1-7.)

## II. Standard for Determining Disability Under the Act

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

2

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking benefits is in fact disabled. 20 C.F.R. § 416.920(a). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 416.920(a)(4)(v).

### III.   The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Riggins has not engaged in substantial gainful activity since October 9, 2019, the amended alleged disability onset date. (Tr. 14.) Next, the ALJ found that Riggins has the following severe impairments: obesity, fibromyalgia, migraine headaches, degenerative joint disease right knee, degenerative disc disease, diabetes mellitus with peripheral neuropathy, mood disorder and anxiety disorder. (Tr. 14.) The ALJ also found that Riggins' asthma, gastroesophageal reflux disease, and polycystic ovarian

3

syndrome, kidney stones, obstructive sleep apnea, plantar wart, fatty liver, and abscess are not severe. (Tr. 16.)

The ALJ determined that Riggins did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 16.) The ALJ also determined that Riggins had the residual functional capacity to perform sedentary work with limitations. Specifically, the ALJ found that

> she can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She can occasionally balance (as defined in the Dictionary of Occupational Titles and Selected Characteristics of Occupations), stoop, kneel, crouch and crawl. She must avoid concentrated exposure to extreme heat, extreme cold, and vibration. She must avoid all exposure to unprotected heights, hazardous machinery, and bright lights (brighter than standard office environment) and loud noise (defined as a 4 or 5 in the Selected Characteristics of Occupations). She is able to learn, remember, and carry out simple, routine tasks; use reason and judgment to make simple, routine work-related decisions; work at an appropriate and consistent pace while performing simple, routine tasks; complete simple, routine tasks in a timely manner with only gradual changes in job setting and duties; ignore or avoid distractions while performing simple, routine tasks; sustain an ordinary routine and regular attendance at work while performing simple, routine tasks; and work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks. She can have no contact with the general public, but is able to occasionally work close to or with coworkers and supervisors without interrupting or distracting them while performing simple, routine tasks.

(Tr. 21.) The ALJ found that Riggins has no past relevant work. (Tr. 28.) Riggins was considered a younger individual on the alleged disability onset date and has a limited education. (Tr. 28.) Transferability of job skills is not an issue because she does not have past relevant work. Based on the foregoing, the ALJ found that there were jobs exist in significant numbers in the national economy that Riggins could perform. (Tr. 28.) These jobs include circuit board screener (Dictionary of Occupational Titles (DOT) No. 726.684-110, sedentary exertion level, SVP 2, approximately 90,000 jobs in the national economy), package machine tender (DOT No. 731.685-014, sedentary, SVP 2, approximately 75,000 jobs in the national economy), and optical goods

4

assembler (DOT No. 713.687-026, sedentary, SVP 2, approximately 150,000 jobs in the national economy). (Tr. 29.) Therefore, the ALJ concluded that Riggins was not disabled, as defined in the Act, from October 9, 2019 through August 2, 2022. (Tr. 29-30.)

## IV. Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894

5

(8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.    Discussion**

Riggins claims the ALJ erred by failing to (1) properly evaluate the medical evidence; (2) properly consider Riggins' subjective complaints of pain; (3) properly evaluate Riggins' headaches; and (4) make an RFC finding that is supported by substantial evidence. The Commissioner responds that the ALJ properly evaluated the evidence in a manner consistent with the SSA's regulations and policies, included all supported limitations in the RFC, and substantial evidence supports the ALJ's determination.

### Listing 11.02 & Evaluation of Headaches

Riggins argues the ALJ erred in her evaluation of Riggins' headaches because the ALJ failed to discuss the proper Listing to consider at step three and failed to evaluate Riggins' headache complaints and reports at step four. Specifically, she argues that the ALJ erroneously ignores objective evidence from neurologists and erroneously discounts Riggins' statements about the intensity, persistence, and limiting effects of her headaches. The Commissioner counters that the ALJ properly evaluated Riggins' complaints and evidence reflecting migraines. The Commissioner does not address Riggins' argument regarding the Listing at step three except to say that the applicable regulation requires consistency and supportability between reported symptoms and objective medical evidence.

6

"'Primary headache disorder[2] is not a listed impairment in the Listing of Impairments (listings); however, [the SSA] may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing.'" *Phillip v. Saul*, No. 8:19CV422, 2020 WL 4001162, at *18 (D. Neb. July 15, 2020) (quoting *Titles II and XVI: Evaluating Cases Involving Primary Headache Disorder,* Social Security Ruling ("SSR") 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019) (footnotes omitted)).

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI [medically determinable impairment] of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and [the SSA] may find that his or her MDI(s) medically equals the listing.

*Id.* (internal quotation marks and citation omitted).

Listing 11.02 provides in relevant part as follows:

11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D: ...

> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C);

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02 (effective Sept. 29, 2016).

SSR 19-4p provides specific guidance on how to evaluate headaches for equivalency to Listing 11.02, in relevant part, as follows:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS[3] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms);

---

[2] "Primary headache disorders are among the most common disorders of the nervous system. Examples of these disorders include migraine headaches, tension-type headaches, and cluster headaches." SSR 19-4p, 2019 WL 4169635, at *2 (footnote omitted).
[3] "AMS" refers to an acceptable medical source. SSR 19-4p, 2019 WL 4169635, at *2.

7

>the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7.

Here, the ALJ found that Riggins did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. The ALJ stated that she had considered Listing 1.14 (peripheral neuropathy), Listings 1.15, 1.16, and 1.18 (musculoskeletal disorders), Listing 12.04 (depressive, bipolar, and related disorders), and Listing 12.06 (anxiety and obsessive-compulsive disorders). (Tr. 16-21.) The ALJ further noted that she had considered the effects of Riggins' obesity, although obesity was not mentioned in the listings. (Tr. 16-17.)

The claimant has the burden of proving that his or her impairment meets or equals a listing. *Johnson v. Barnhart,* 390 F.3d 1067, 1070 (8th Cir. 2004). Remand is not required when an ALJ fails to explain why an impairment does not meet or equal a listed impairment "as long as the overall conclusion is supported by the record." *Boettcher v. Astrue,* 652 F.3d 860, 863 (8th Cir. 2011). Remand is warranted, however, "where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." *Vance v. Berryhill,* 860 F.3d 1114, 1118 (8th Cir. 2017). Having carefully reviewed the record, I find that there is sufficient evidence of chronic, severe headaches during the relevant time period that the ALJ must consider whether the impairment medically equals Listing 11.02.

In her Function Reports completed in December 2019 and March 2020, Riggins reported that her migraines interfere with her daily life and she has to "stop everything take meds and try and sleep for a few hours." (Tr. 624.) She reported that when she gets the migraines, she becomes extremely sensitive to light, sound, and smells. (Tr. 651.)

Riggins also testified about her headaches and migraines at the July 13, 2022 hearing before the ALJ. Her testimony is as follows: Riggins has a headache at least once a day. She stated she has tried to follow doctors' instructions to try to deal with the headaches without medication, but when she does not take medication, the headaches become migraines. Riggins testified she gets migraines maybe once a week. The migraines start with pain in her eyes, and then her temples. Heat, light, and sound can make the migraines worse, including being out in the sun. Physical activity or lifting or moving things can also cause her headaches. She also usually feels nauseous and sometimes throws up. Once the migraines get severe, the only thing she can do is lay in a quiet, dark room and take medicine, apply ice, and try to sleep. Sometimes the migraine goes away after a few hours of sleep, or sometimes she will have a migraine for days. Riggins has tried several medications for the headaches and migraines, and she tried a Botox injection, but it did not help, and she had a migraine for two weeks afterwards. (Tr. 364-67.)

At the hearing, the ALJ asked the vocational expert ("VE") a hypothetical assuming an individual with the RFC that the ALJ ultimately imposed on Riggins, and the VE found the hypothetical individual could perform work in the national economy. (Tr. 371-372.) Answering questions posed by claimant's counsel, the VE also testified that the same hypothetical individual would not be allowed to be off task or less productive by anything more than 10% below the average productivity, would not be allowed daily unscheduled breaks, and would not generally be allowed to be absent more than once a month. (Tr. 373.) When asked "if the hypothetical individual

9

needed a place to lay down in a dark quiet room at the workplace would that be available and allowed?" the VE responded "No." (Tr. 374.)

In her decision, the ALJ summarized evaluations performed by two neurologists:

> On November 30, 2020, the claimant underwent a neurological evaluation by Michael D. Snyder, M.D., for a longstanding history of chronic migraines. It was noted that over time, the headaches had worsened and converted into a daily headache pattern. She reported having headaches every day with superimposed migraines at least three days a week that was compounded by overuse of her medications (Exhibit C12F, p. 6). In addition, she had chronic pain and paresthesias attributed to fibromyalgia. However, upon examination, the claimant followed commands and she had a normal fund of knowledge, attention, short-term recall, fluency, comprehension and insight. She had normal range of motion without tender points of her cervical spine. Sensation was intact and there were no other neurological deficits noted (Exhibit C12F, p. 9).
>
> The claimant underwent another neurological evaluation by Tariq Jawaid Alam, M.D., on August 30, 2021, for migraine headaches and nerve pain. The claimant reported she has tried Topamax, Cymbalta, Gabapentin, Metoprolol, Aimovig and Amitriptyline without much relief (Exhibit C18F, p. 8). She appeared developmentally normal with no deformities. She was in no distress. She had a normal physical examination, as well as a normal mood and affect noted. There were no neurological deficits noted. Dr. Alam instructed the claimant to keep a headache diary, stop Imitrex, start Ubrelvy and continue taking Amitriptyline, as well as approval for Botox (Exhibit C18F, p. 12). She was also encouraged to stop smoking and lose weight. On November 30, 2021, the claimant received a Botox injection without complication (Exhibit C18F, p. 36). Dr. Alam noted that although she reported having headaches 29 days per month and they lasted 24 hours, the claimant has not missed work or been to the emergency department due to headache (Exhibit C18F, pp. 36, 37).

(Tr. 26.)

In her brief in support, Riggins argues that the ALJ left out both Dr. Snyder's and Dr. Alam's records regarding Riggins' history and description of her typical migraines, including evidence to support her claim that she suffers migraines at a frequency and duration consistent with that required by Listing 11.02B. (ECF No. 17 pp. 8-9 citing Tr. 1173, 1176.) In her history, Dr. Snyder included that she developed migraines in childhood, and her typical migraine is described as follows:

10

> Starts with bilateral retroorbital headache, progresses to a bilateral frontotemporal or generalized headache, described as sharp, pulsating, "like a hammer"; associated with photophobia/phonophobia, nausea and blurry vision; restricts activity; she occasionally "sees spots in her vision" which sounds like visual aura; she has occasional ice pick headaches in her eye or temple region; can last hours to days. Triggers including overheating, too much physical exertion, loud noises, menstrual cycle, stress. Over time, she has worsened and has converted into a chronic daily headache pattern over the last 3-4 months. She has a headache every single day with superimposed migraines at least 3 days/week (headaches 30 days/month, migraines 12+ days/month), pattern consistent with chronic migraine. Pattern is compounded by overuse headaches as she is treating headaches with sumatriptan (used to work, now not as effective; she always runs out every month), ibuprofen, or Tylenol most days. Currently she is on nortriptyline 150 mg qHs, which she doesn't really think has helped, she was also recently started on metoprolol 25 mg bid which also has not helped. Previous preventive treatment with topiramate was helpful, but it caused kidney stones and had to be stopped. She has a strong family history of migraine.

(Tr. 1173.) Dr. Snyder found that Riggins "meets the diagnostic criteria for chronic migraine (history of migraine, > 15 headache days/month with > 8 migraine days/month; headache > 4 hours on affected days, pattern present for > 3 months) and has failed standard migraine preventive medication… and therefore is a good candidate for Botox." (Tr. 1176.)

> Dr. Alam's records reflect the patient's reported history, including:

> The headache is located behind her eyes. The headache is also located in the temples. The headache is described as throbbing and pulsating. She has associated nausea, vomiting, light and sound sensitivity. She has some trigger factors including exercise, stress, bright light, excessive noise, hunger and sleep disturbances. She averages 20 headache days a month. She does not have any auras. She states laying down in a dark room and applying alternating hot and cold packs seems to be helpful. She has tried Topamax, Cymbalta, gabapentin, metoprolol, Aimovig without much relief. She is currently on amitriptyline 50 mg daily without much relief either. She also takes Imitrex as needed which has not been helpful.

(Tr. 1680.) Dr. Alam also recommended Botox and for Riggins to keep a headache diary and continue Amitriptyline daily, and to stop Imitrex and Ubelvry. (Tr. 1684.) At her follow up appointment three months later, Dr. Alam's records reflect that Riggins reportedly continued to have almost daily headaches that can last 24 hours. (Tr. 1703.)

11

Generally, "an ALJ's failure to adequately explain [her] factual findings is 'not a sufficient reason for setting aside an administrative finding[.]'" *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) (quoting *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999)). However, as stated above, remand is appropriate where the ALJ's factual findings are insufficient to permit the court to conclude that substantial evidence supports the Commissioner's decision. *See Vance,* 860 F.3d at 1118.

Upon consideration of the ALJ's decision and the record as a whole, the Court finds that even if the ALJ's decision arguably had an implied finding that Riggins did not medically equal the severity of Listing 11.02B, the ALJ failed to support such a finding. Defendant argues that Riggins' self-reports of migraines to Dr. Alam could not satisfy the required description from an acceptable medical source of a typical headache event to meet the Listing. (ECF No. 18, p. 10.) However, the ALJ did not discuss Listing 11.02B whatsoever, and it is not the role of this Court to speculate on the reasons that might have supported the ALJ's decision or supply a reasoned basis for that decision that the ALJ never gave. *See Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (internal quotations omitted) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand."). Moreover, at step four, the ALJ's discussion of Riggins' headaches calls into question whether the ALJ considered all the evidence relating to Riggins' continuing headaches or the effects of the headaches on her functional abilities, especially in light of the vocational expert testimony.

On this record, the ALJ's failure to discuss the relevant listing "requires a finding that there is not substantial evidence to support the ALJ's general conclusion that Plaintiff does not have an

12

impairment or combination of impairments that meets or equal the severity of one of the listed impairments." *Phillip*, 2020 WL 4001162, at *26 (internal quotation marks and citation omitted). The Court therefore remands this matter to the Commissioner, for further consideration of whether Plaintiff has an impairment that meets or equals the severity of one of the listed impairments. *See, e.g., Boyd v. O'Malley,* No. 4:23-CV-535 PLC, 2024 WL 3984615, at *8 (E.D. Mo. Aug. 29, 2024) (reversal required where ALJ failed to explain her reason for finding the claimant's headaches did not medically equal Listing 11.02); *Nail v. Kijakazi*, No. 4:20 CV 1422 CDP, 2022 WL 832328, at *7 (E.D. Mo. Mar. 21, 2022) (the ALJ's finding that claimant's migraines did not equal Listing 11.02 was an error at step three and led to a subsequent error at step four in the ALJ's conclusions regarding the frequency and effects of claimant's headaches); *Marshall v. Comm'r of Soc. Sec. Admin.,* 2023 WL 8601218, at *8 (D. Neb. Dec. 12, 2023) (remanding with directions to award benefits where the ALJ found claimant did not meet the listing despite overwhelming evidence that claimant consistently was seen by his treating doctor, neurologist, and the emergency room for continuing migraines); *Mann v. Colvin*, 100 F. Supp. 3d 710, 721 (N.D. Iowa 2015) (the ALJ's failure to consider the relevant listing meant "there was no 'choice' and, therefore, no 'zone' such that remand was necessary with directions that the ALJ consider whether claimant's migraines met or equaled the listing).

With respect to the remainder of Riggins' claims, the ALJ will be able to reconsider and reevaluate the evidence in toto as part of the reconsideration of this claim, including more fully evaluating and resolving inconsistencies among the prior administrative findings.

Upon reconsideration of appropriate evidence, the ALJ may well determine that Riggins' migraines do not meet the listing at step three, and/or that Riggins is not disabled. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after properly

13

considering all evidence of record and undergoing the required analysis, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

## VI. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Riggins' Complaint and Brief in Support of Complaint is **GRANTED** in part and **DENIED** in part. (ECF Nos. 1, 17.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

Dated this 19th day of September, 2024.

_____
RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE